Cassidy *v.* Le Fevre.

for the use and benefit of others; and this liability arises either by virtue of an actual agreement, or upon the familiar principle that they have held themselves out to the world as partners.

We have looked into the other exceptions, but find no error in the rulings of the court. The evidence rejected, however relevant to establish grounds of equitable relief, was wholly impertinent to the issue presented for trial.

The judgment should be affirmed, with costs.

[KINGS GENERAL TERM, February 14, 1870. *J. F. Barnard, Tappen* and *Gilbert,* Justices.]

---

## CASSIDY *vs.* LE FEVRE and WHITTAL.

The plaintiff agreed to furnish to the defendants an engine, boilers, &c., to be of the best materials and subject to the approval of the defendants' engineer, and to guaranty that they should be in perfect running order. The engine, &c., were delivered, and notes given for the price, but on attempting to use the engine, one of the flues collapsed, so as to prevent any further use of it. The plaintiff, on being applied to by the defendants, promised to repair the flues, which he did, by putting in new ones, and the engine, as repaired, was, with the boilers, approved by the engineer, accepted by the defendants, and continued to be used by them. *Held* that the defendants not having notified the plaintiff of their determination not to accept the engine, on discovering the defect, but having permitted him to make alterations, and continued to use the engine, afterwards, this was to be deemed an acceptance of the same, and a waiver of any claim on account of the previous defect.

Accordingly *held* that for the delay caused by the substitution of new flues, the defendants were not entitled to recover damages.

APPEAL by the defendants from a judgment entered upon the report of a referee.

The action was brought to recover the amount of two promissory notes, and a balance of account. The claims were for the purchase price of a steam engine and boilers and other property sold the defendants for their factory, known as the Glenville Mills. The contract of sale was

made by letter. The defendants set up in their answer a warranty and breach, and asked to recoup damages. The defect complained of was imperfection in one of the flues of one boiler, which, as the defendants alleged, collapsed in consequence. The damage sought to be recovered was loss of profits of the mill while a new flue was being put in. There was no attempt to prove the difference in value between such an article as the defendants alleged the plaintiff was to deliver and what he did deliver. The plaintiff's proof showed that the boilers and flues were such as the contract called for, and that he fully performed the agreement on his part. The referee before whom the action was tried found and reported the following facts:

That on or about the 23d day of February, 1866, the plaintiff undertook and promised to furnish, sell and deliver to the defendants a steam engine of certain dimensions and description, and certain machinery, appurtenances and furniture, together with two boilers of a certain size, with two return flues each, for the price or sum of $5750, payable in notes of the defendants at four months from the time of delivery thereof. That the plaintiff so agreed to furnish the same in a reasonable time, and that they should be of the best materials, and should be subject to the approval of the engineer of the defendants, and he agreed to, and did, guaranty that they should be in perfect running order. That the plaintiff, on or about the 1st day of March, 1866, delivered to the defendants an engine and other things of the size and proportions called for by the contract, and also two boilers of the size and general proportions and character called for thereby, under and pursuant to said contract. That the plaintiff, on or about the 11th day of June, 1866, sold and delivered to the defendants certain other goods, wares and merchandise, of the value of $106.19. That the defendants shortly thereafter made and delivered to the plaintiff their two several promissory notes, one for $3000 and one for $2500,

Cassidy *v.* Le Fevre.

being the same mentioned in the complaint herein, in payment on account of $5750, the price of said original boilers, machinery and accompaniments. That there remained of the price of said engine and boilers, not embracd in said notes, the sum of $250, and also for certain other goods sold and delivered to the defendants, the sum of $106.19; making in all the sum of $356.19 due the plaintiff on account, besides the amount embraced in said notes. That on or about the 25th day of April, in said year, the defendants attempted to use said engine, and while so attempting to use it, and while steam was in the boilers, one of the flues thereof collapsed by reason of the pressure of steam thereon. That by reason of the collapse of said flue, the said engine and boilers became incapable of being used, and remained so unfit for use for a long time, and until about the 13th of June in said year. That shortly after the time when said flue so collapsed, the defendants called on the plaintiff in respect thereto, and the plaintiff proceeded to repair the same, and also to take out the other flues from both boilers, and replace them with new ones, at the request of the defendants. That the repairs of said collapsed flue, and the alterations or replacing with new ones of the other flues, together, occupied until about the 13th day of June following the collapse. That during said time the defendants were deprived of the use of said engine and boilers, and also of another boiler intended for use in connection therewith. That by reason of the loss of the aid and services of said engine and boilers, occasioned by the collapse of said flue, the work of said mill was retarded, the amount of cloth manufactured for the time was less, and that manufactured was of less value than otherwise it would have been. That the engine and boilers, when delivered to the defendants, were of the best material in common use for such purposes, and were in perfect running order. That the engine delivered was approved by the engineer of the defendants about the time

the same was received by them. That the boilers and flues first delivered were not approved by him, and were not passed upon by him at all. That a part of each of the flues in said boilers was made of iron not entirely new, but which had been in use elsewhere for about six months. That that fact, however, made very little, if any, difference in the quality or value of the article, and none at all in the strength of it at the time of the delivery of it to the defendants or at the time of the collapse. That the boilers, as they were after the repairs and alterations made by the plaintiff after the collapse, were approved by the engineer of the defendants, and were without fault. That the defendants paid for the board of the workmen of the plaintiff while repairing the flues of the boilers $124, and for freight and cartage of things sent them by the plaintiff for his use $29.50, making in all $153.50.

And the referee found, as conclusions of law, that the plaintiff was not liable to the defendants for damages arising from the collapse of said flue, arising from the loss of the use of the engine and boilers and other machines, for the time. That the plaintiff was entitled to recover against the defendants the amount of said two notes, with interest on them, from the time they fell due, respectively, and also the sum due on account; being $356.19, with interest on $250, part thereof, from the 1st day of July, 1866, and on the remaining part thereof, $106.19, from the 13th day of June, 1866, which, at the date of the report, amounted in the aggregate to $6846.50. That the defendants, however, were entitled to recover, by way of counterclaim, the sum paid by them for board of the workmen for the plaintiff, $124, and also the sum paid for him for freight and cartage on things sent them for use by the plaintiff, $29.50, and interest on said sums from the 13th day of June, 1866, which, at the date of the report, amounted to $176.72. Which sum, being deducted from the amount recovered by the plaintiff, leaves a balance

of $6669.78, for which sum the plaintiff was entitled to judgment against the defendants.

*J. M. Robertson,* for the appellants.

I. By the contract the respondent agreed to furnish the machinery in a reasonable time, and expressly guaranteed it " all to be of the best material, and subject to the approval of your (appellant's) engineer," and in perfect running order. (*a.*) This was an absolute guaranty against all contingencies. The price to be paid was the consideration for such an assumption of liability. (*b.*) Where the law imposes a duty upon a party, unforeseen accidents or the act of God may excuse him from performance. But where he imposes it upon himself by contract of guaranty, he is not excused from fulfillment, although prevented by the act of God. (*Harmony* v. *Bingham,* 12 *N. Y. Rep.* 99.)

II. The referee erred in his finding, " that the engine and boilers, when delivered to the defendants, were of the best material in common use for such purpose, and were in perfect running order," although he finds that they were not new, and had been used for six months. (*a.*) The referee has found the first mentioned fact not only without any evidence to sustain it, but contrary to the undisputed fact, as found by himself, that the defendants attempted to use said engine, and while so attempting to use it, and while steam was in the boilers, one of the flues collapsed. The collapse occurred while they were attempting to use the boilers for the purpose for which they were intended. They were never in running order, for in the attempt to run them the collapse occurred. The respondent recognized this as a fact, and immediately removed all the old flues and replaced them by others.

III. The referee erred in his conclusion of law, " that the plaintiff is not liable to the defendants for damages resulting from the collapse of said flue, arising from the loss

of the use of the engine and boilers and other machinery, for the time." (*a.*) The referee has found the fact that the appellants were deprived of the use of all said machinery from the 25th of April to the 13th of June; and that during that period the work of the mill was retarded, the amount of cloth manufactured was less, and of less value than it would have been if the flues had not collapsed. (*b.*) The respondent having agreed to do this work, the law implies that he was to do it in a reasonable time. (2 *Pars. on Cont.* 660, 5*th ed. Sansom* v. *Rhodes,* 8 *Scott,* 544. *Davis* v. *Tallcot,* 2 *Kern.* 184.) He himself has fixed what was a reasonable time to complete the work, by giving possession of it as a finished job on the 25th of April. It was not finished until the 13th of June. The failure of the respondent to complete his work at the time, renders him liable for actual damages. (3 *Pars. on Cont.* 155, *et seq.*)

IV. The referee erred in finding that the engineer of the defendants approved of the boilers after the collapse. The evidence is conclusive that he did not approve of the boilers, and there is no evidence to the contrary. By the agreement the approval of the engineer was a condition precedent to the payment. It is entirely competent for parties thus to contract. (*Smith* v. *Brady,* 17 *N. Y. Rep.* 173–176. *Butler* v. *Tucker,* 24 *Wend.* 447.)

*Brown & Estes,* for the respondents.

I. The referee's finding, that the plaintiff was not liable, is fully justified and right, for the following reasons: He had previously found that the engine, boilers and flues were of the size, proportions and character called for by the contract, and that they were made of the best material, and were in perfect running order. That the collapse was caused by pressure of steam on the flue, not from defect in the material. That the engineer approved of the boilers, and they were "without fault."

II. The findings of the referee, and his conclusions, are fully sustained by the evidence. (*a.*) The defendants' engineer approved of the engine, boilers, flues and all. This was the completion of the job and performance of the contract by the plaintiff. It was an acceptance of the boilers, &c., as a compliance with the agreement. (*b.*) The inequalities and consequent damage of the cloth manufactured, were owing to other causes than want of power. (*c.*) The flue collapsed after the fire had been on from five to eight hours; much more than enough to get up full pressure of steam, and the pressure of steam in fact caused the collapse. (*d.*) The damages claimed by the defendants were speculative, and not allowable. (*e.*) The defendants examined the boilers and flues for themselves before purchasing, and bought with full knowledge or opportunity to know what they were. (*f.*) The mill manufactured as much or more cloth intermediate the collapse and completion of repairs than before. (*g.*) The power was insufficient before the new boilers were got, and same damage resulted then to the goods, as after the collapse. (*h.*) The boilers were tested to 130 lbs. pressure and stood it well, and they were in all respects what the contract called for. (*i.*) The collapse occurred from other causes than defective flues, to wit, from breaking of steam pipe by fall of timber upon it. (*j.*) The engine, boilers and everything were in perfect working order. (*k.*) The contract does not bind the plaintiff to furnish the boilers, &c., within any specified time. He was simply to furnish engine, boilers, &c., to be approved by the defendants' engineer, and this he has done.

III. The plaintiff's contract was to deliver boilers, &c., that should be approved by the engineer of the defendants. When the boilers were delivered they were not accepted till other flues had been put in, and then were approved and accepted by the defendants' engineer. This was a full compliance with the contract, and performance there-

of. The contract gave the plaintiff the right, if the boilers were not accepted and approved, as first delivered, to deliver others or improve those until they should be approved. This is the true construction of the contract, and it is absurd to say that the plaintiff is responsible for loss of use of the mill, or anticipated profits on goods to be manufactured, while he should be doing what his contract gave him the right to do, to wit, furnishing such boilers as should be approved by the defendants' engineer. The contract contemplated that the first attempt might not be satisfactory or approved,. but the plaintiff was to make it satisfactory, which he ultimately did, as the defendants' engineer and witness swears. Again; the contract does not bind the plaintiff to deliver or furnish approved boilers, &c., within any specified time. How, then, can the defendants recover for the use of the mill, profits on cloth, work or board. The words, "all to be of the best material," are merely descriptive of the class of material. There is no warranty in the agreement.

IV. But if the agreement is to be construed as containing a warranty, binding the plaintiff to deliver articles of the "best material," in the first instance, and as a "guaranty" that the same should be in "perfect running order," so that the defendant could maintain an action for non-compliance, still it is insisted and submitted that the proof shows that 'the plaintiff fully performed. The proof all shows that the material of the first as well as the last flues, was the best ever used, unless a certain other specific brand is designated and contracted for; and the proof also shows that the whole was in perfect running order. Again; it is submitted that the warranty (if one) only related to the job when completed, and not to such portions of the articles as might be rejected in doing it, so as to be approved by the defendants' engineer. The only words of warranty, if any, are, "all to be of the best material and in perfect running order." It will be noticed that

Cassidy *v.* Le Fevre.

there is no agreement that it shall be new, or that the flues will not collapse, or will sustain any given amount of pressure, or afford any given amount of power, or that all shall be in perfect running order within any designated period. All that was necessary to fulfill the agreement was, that the material called by the trade the "best," should be furnished, and the machinery in perfect running order, which the proof shows it was.

V. The evidence entirely satisfies the mind that the collapse of the flue arose from an over pressure of steam, or from the concussion by the breaking of the steam pipe, or from some other of the numerous causes which the witnesses say might produce the collapse. The fire was up much longer than required to get full pressure, as both Cassidy and Unguelter swear. The collapse could not have arisen from defective flue, for it had been thoroughly tested three or four times previously, and stood the test well.

VI. If the defendants could establish any counter-claim at all, (which we utterly deny,) it would be upon the ground of warranty of the articles. If a warranty were established, on which the defendants could recover, the measure of damage would be the difference between the value of the articles if as warranted, and their value as they were in fact. Yet the defendants have not even attempted to establish one penny of damage on this principle, but have gone into the question of speculative or possible profits of their mill, which are not recoverable on any principle known to the law. (*Blanchard* v. *Ely*, 21 *Wend.* 342. *Hadley* v. *Baxendale*, 9 *Eng. L. and Eq. R.* 67. *Griffin* v. *Colver*, 16 *N. Y. Rep.* 489.)

VII. The defendants having bought the boilers after a full inspection, and opportunity to see all defects, if any, must be deemed to have relied upon their own examination and judgment, and not upon any warranty. They are therefore remediless.

*By the Court,* INGRAHAM, P. J.   The contract in this case was to furnish an engine, boilers, &c., to be of the best materials and subject to the approval of the engineer, delivered on board of a boat, &c.   The plaintiff was to guaranty that they should be in perfect running order. No time for the completion of the work was stated in the contract.

The engine &c. was delivered about the 1st of March, 1866, and the defendants gave the notes in suit in payment, one dated 1st March, 1866, and one dated 10th April, 1866.   About the 25th of April, 1866, on attempting to use the engine, one of the flues collapsed, so as to prevent the further use of it.   The defendants applied to the plaintiff, who promised to repair the flues, putting in new ones, which repairs were completed in June following, when the same were used by the defendants.

The referee found that the engine was approved by the engineer, but the boilers were not passed upon, by him; but that they were approved by him after the repairs, and were without fault; and gave judgment for the plaintiff for the amount due on the notes.

Some of the findings of the referee upon the facts are not sustained by the evidence, and if the question in this case was whether the defendants were bound to accept the engine when tendered, I should be of the opinion that the report could not be sustained.

But it seems to me that this judgment must be affirmed upon other grounds.

There was no time stated for completing the contract. When the engine was delivered, it is conceded to have been within a reasonable time, which is all that the contract required.   When so delivered, it was the duty of the defendants to have had it inspected and passed upon by the engineer.   If it was not approved of by them it should not have been accepted.   If it be said that its sufficiency could not be determined until after trial, when the flue

collapsed and the defect was discovered, the defendants should then have notified the plaintiff of their determination not to accept it. Instead of doing so, they permitted him to make alterations, and when altered, they accepted it, and according to the findings of the referee, their engineer approved of it, and they continued to use it, afterwards.

Under the evidence and the finding of the referee, we must come to the conclusion that after the flues were altered and new ones substituted, the engine and boilers were approved and accepted. The only question then would be whether, for the delay caused by the substitution of new flues, the defendants could recover damages.

It is said by Pratt, J., in *The Ilion Bank* v. *Carver*, (31 *Barb.* 236:) "In executory contracts, if a fraud has been perpetrated against a party, and he goes on and performs the contract, on his own part, he will be deemed to have waived all objections which he might have made on account thereof. In such a case, after having performed without objection, he can neither repudiate nor sustain an action for damages."

So in *Smith* v. *Brady*, (17 *N. Y. Rep.* 187,) Comstock, J., says: "A person may accept a benefit under a contract of which the conditions precedent have not been performed by the other party; and he may do this in such circumstances that a new obligation to pay for the benefit will arise."

In *Vanderbilt* v. *The Eagle Iron Works*, (25 *Wend.* 665,) there was an engine to be constructed, and when put on board the steamer was deficient in some respects from the contract; and the court held that the acceptance of the engine on board of the boat, and continued use and enjoyment, was to be deemed a waiver of the condition before payment of the money, and that all that could be required was a supply of the deficient articles.

Here the defect was remedied by the maker with the

assent of the purchaser, and his continued use of the engine since is an acceptance of the same, and a waiver of any claim on account of the previous defect.

Judgment affirmed.

[FIRST DEPARTMENT, GENERAL TERM, June 6, 1870. *Ingraham*, P. J., and *Cardozo* and *Geo. G. Barnard*, Justices.]